STATE, THOMAS F. McCRAN, ATTORNEY-GENERAL, RE-
LATOR, v. THE BOROUGH OF OCEAN GROVE, IN THE
COUNTY OF MONMOUTH, RESPONDENT.

Argued January 22, 1921—Decided February 15, 1921.

The act of the legislature (*Pamph. L.* 1920, *p.* 190) under which the
borough of Ocean Grove was created is unconstitutional, be-
cause it offends against article 4, section 7, subdivision 11 of the
constitution. which provides the legislature shall not pass local
or special laws "regulating the internal affairs of towns and
counties." Section 2 of the act, after creating the borough of
Ocean Grove, provides that it shall be governed by the general
laws of the state relating to boroughs, excepting, however, in
five particulars named, such as streets, building any state, county
or municipal boulevard through the territory, maintaining the
moral and religious life in the described territory which shall
not in any way be impaired or destroyed.

On *quo warranto.*

Before Justices SWAYZE, PARKER and BLACK.

For the relator, *Ward Kremer.* and *Robert H. McCarter.*

For the respondent, *Richard W. Stout, Charles E. Cook*
and *Edmund Wilson.*

The opinion of the court was delivered by

BLACK, J. The constitutionality of the act (*Pamph. L.*
1920, *p.* 190) is challenged by the relator. This is the act
of the legislature under which Ocean Grove, in the county of
Monmouth, became a borough. The act is entitled "An act
to incorporate the borough of Ocean Grove, in the county of
Monmouth." The attack is made upon the act for three rea-
sons—*first,* because it is special; *second,* because its title is
insufficient; *third,* because it interferes with the vested rights
of the Ocean Grove Camp Meeting Association, which was

incorporated by an act of the legislature. *Pamph. L.* 1870, *p.* 397. The act provides that it shall not become operative until its provisions shall be submitted to the voters of the described territory, at a special election to be held within the said territory. The act was adopted by a majority of the legal voters, at an election held on the 4th of May, 1920. The attorney-general of the state filed an information in the nature of a *quo warranto,* challenging the constitutionality of the act. The election was held on May 4th, 1920, under the act; an election was also held on the 10th day of August, 1920, in the said borough, under which a mayor, six councilmen, an assessor and collector were elected. A meeting was held on the 16th day of August, by which the duly-elected officers proceeded to organize the borough and also to exercise the functions of government. The information inquires by what warrant the said borough is declared to be a body politic and corporate in fact and in law and by what warrant it exercises the privileges, liberties and franchises thereof. To this information a demurrer was interposed by the defendant, then a joinder in demurrer by the relator. The legal question, therefore, submitted to us for solution is, Is the act (*Pamph. L.* 1920, *p.* 190) constitutional? We think it is not, and for the first reason stated, viz., because the act is special and forbidden by the constitution. This renders it quite unnecessary to discuss or express any opinion on the other two reasons.

The point is not that a borough was created by a special act of the legislature. (This is in conformity with a method of legislative procedure, authorized by the statute and approved by the courts. *Rev.* 1897, *p.* 285; *Comp. Stat., p.* 226; *Smith* v. *Hightstown,* 71 *N. J. L.* 276.)

But because the act offends against article 4, section 7, subdivision 11 of the constitution, which prohibits the legislature from passing any private, local or special laws "regulating the internal affairs of towns and counties." The act under discussion (*Pamph. L.* 1920, *p.* 190, ¶ 1) creates the "borough of Ocean Grove" and provides that it shall be

governed by the general laws of this state relating to boroughs; excepting, however, that the streets shall not be used for the purposes of any vehicular travel on Sunday and to enforce such restrictions gates shall be erected at the entrance to all streets, which shall be closed at twelve-one o'clock A. M., on each Sabbath day, and kept closed until twelve o'clock midnight of such Sabbath day.

The borough shall be restricted from enacting by ordinance, resolution or otherwise, any encroachment upon or change of the restrictions above referred to as to Sunday travel. The borough shall not give, by ordinance, resolution or otherwise, any authority to build or construct a state, county or municipal boulevard through any of the territory of the borough. The moral and religious life and standards as heretofore maintained within the territory shall not be, by any ordinance, resolution or other method of legislation by said borough in any way impaired or destroyed. To sustain this act the argument, in brief, is, that these provisions are either surplusage—a recognition of vested rights—and if so, may be disregarded, or unconstitutional, and therefore may be exscinded; but this, in effect, stripped of its subtleties, is nothing more or less than taking a statute, tearing it asunder to suit a particular purpose, and when so mutilated, to say that in its altered form it then conforms to the organic law. This is pure legislation and not the function of the courts. We are not unmindful of that line of cases which hold that under well-recognized conditions, unconstitutional provisions may be eliminated from a statute, such as *Riccio* v. *Mayor, &c., of Hoboken,* 69 *N. J. L.* 649; *Hann* v. *Bedell,* 67 *Id.* 148, or that other line of cases which hold when there are two permissible views, as to the existence of a constitutional limitation, one unfavorable and the other favorable, the courts will give effect to the view of the constitution, which supports the enactment, even though the other view seems to the court to be the preferable one. *Hudspeth* v. *Swayze,* 85 *Id.* 592; *Attorney-General* v. *McGuinness,* 78 *Id.* 346; *Attorney-General* v. *McKelvey, Id.* 621.

We think this problem, however, is settled adversely to the defendant by what Mr. Justice Collins said, speaking for this court in the case of *Miller* v. *Greenwalt,* 64 *N. J. L.* 197, which was affirmed by the Court of Errors and Appeals, for the reasons given by Mr. Justice Collins in the Supreme Court. *Ibid.* 722. In that case, he said, a reasonable construction is that new divisions may be created and existing lines may be changed by local and special laws at the legislative will, but that any regulation of the internal affairs of the changed divisions may be accomplished by some valid law—that is, a general or special law enacted prior to the amendment (of 1875) or a general law enacted since the amendment. In the present case the legislature has acted on this theory. It passed an act of annexation, pure and simple, enlarging the territory of a city existing under a special charter antedating the amendment.

To the same effect are *Long Branch* v. *Sloane,* 49 *N. J. L.* 356, 362; *Township of Lakewood* v. *Brick,* 55 *Id.* 275; *Pell* v. *Mayor, &c., of Newark,* 40 *Id.* 71.

It seems quite unnecessary to extend this discussion further or to add citations of illustrative cases from our reports, pointing out the difference between general and special laws. Perhaps, upon no other subject in our legal literature has there been displayed such subtleties and such a wealth of learning, beginning with the first case after the constitutional amendment of 1875, that of *Van Riper* v. *Parsons,* 40 *N. J. L.* 1, down to the present time.

The demurrer must be overruled on the ground that the act (*Pamph L.* 1920, *p.* 190) is unconstitutional and a judgment of ouster entered against the defendants, but without costs.